# City of Reading *v.* United Traction Company, Appellant.

*Street railways—Rate of fare—Strip tickets—Ordinances—Agreement—Equity.*

The right of a traction company to discontinue the sale of strip trolley tickets at the rate of six for a quarter on all its lines will not be taken from it by implication where all that appears is that a third party, whether the authorized agent of the company or not, in communicating with a committee of councils in reference to certain proposed changes and extensions of certain lines of a lessor company, stated in a letter that "there would be no increase in fare" the fare not to be increased being to carry a passenger on the .designated lines between certain points; and that the councils in an ordinance granting permission for the extensions provided "that the rate of fare shall .not exceed five cents for a single fare, or.six tickets for twenty-five cents," there being nothing in the ordinance to indicate that the sale of six tickets for twenty-five cents, good on all the company's lines, was to be continued.

Argued Feb. 27, 1911.   Appeal, No. 40, Jan. T., 1911, by defendants, from decree of C. P. Berks County, No. 1,012 equity docket, 1910, in case of City of Reading v. United Traction Company, Front & Fifth Street Railway Company, and Reading Transit Company, Appellants.   Before FELL, C. J., BROWN, POTTER, ELKIN, and STEWART, JJ.   Reversed.

Bill in equity for an injunction.   Before ENDLICH, P. J. The following facts appear from the record:

The United Traction Company was formerly the lessee of the various street railways in the city of Reading. The Reading Transit Company is the present lessee under a lease from the United Traction Company.   The Front & Fifth Street Railway Company is one of the original lessor companies.

In 1906 the Front and Fifth street line and the Schuylkill avenue line radiated from the center of Reading to the outskirts, running not parallel but in the same general

direction. Each was a single track railway with turn-outs and each terminated in a dead end. It was deemed desirable that the dead ends be connected by a loop, so that cars could run out one street and in the other, thus abolishing the necessity for turn-outs. This suggestion was taken up by Dr. Walter A. Rigg, who was a son of the president of the United Traction Company, who conferred with the railway committee of the city councils on the subject, writing the following letter:

"John A. Rigg, Pres.       " H. C. Moore, Asst. to Pres.
"T. W. Grookett, Jr.,      " S. E. Rigg, Gen'l. Supt.
    Sec'y & Treas.

" UNITED TRACTION COMPANY

"READING, PA., Oct. 6, 1906.
" MR. IRA W. STRATTON,
    " Chairman, Railways Committee of Councils
        of the City of Reading, Pennsylvania.
"Dear Sir:

"In answer to your inquiries concerning the removal of the turnout on Schuylkill Avenue in the event of the laying of an additional track on Windsor Street, to better the railway service in the northwestern section of the City, and as to the service, fare, etc., I can only say that all turnouts are obstructions to be avoided if possible, and that therefore in the event of the action you refer to, the turnout on Schuylkill Avenue will be removed.

"It is manifest to the Company as well as to the public in that district that the travel is congested under the present arrangement, and this would of course be relieved by the so-called loop, which would enable the Company to give more frequent service, and that would be done. The only limit of the service in all cases being the possibilities under the circumstances. In this case I may say that the Company would give a more frequent service than the present ten-minute schedule, and will increase the service from time to time as the travel may warrant.

"There would be no increase in fare. The fare limit

would be Buttonwood Street, that is, a single fare would carry a passenger from any part of town to any point on Schuylkill Avenue or around the loop to Front & Buttonwood streets, and for incoming passengers a single fare would be good from Schuylkill Avenue and Buttonwood street, and points beyond, around the loop to any part of the City.

"Yours truly,<br>"(Signed) Walter S. Rigg."

The committee reported to councils, presenting the above letter and recommending the grant of permission to make the connection suggested and the passage of an ordinance for that purpose. Such an ordinance was at once passed, in the following form:

"Section 1. Be it ordained by the Select and Common Councils of the City of Reading: That the ordinance entitled, 'An ordinance granting the Front & Fifth Street Railway Company the privilege of laying a single track railway, with necessary curves, turnouts, connections and switches, beginning at Front and Schuylkill Avenue, there connecting with the track of the Reading City Passenger Railway Company, thence north on said Front Street to Oley Street, thence West on Oley Street to Weiser Street, thence North on Weiser Street to Windsor Street, thence East on Windsor Street to Front Street, thence connecting with the track of the Reading & Temple Electric Railway Company, and to cross all other streets and to erect poles and string overhead wires to operate the same,' approved November 11, 1902, be and the same is hereby amended so as to grant the Front & Fifth Street Railway Company the privilege of laying a single track railway on Windsor Street from Weiser Street to Schuylkill Avenue, with necessary curves and connections, subject to all the conditions, provisions, restrictions and stipulations of the ordinance to which this is an amendment, and of sec. 2 and sec. 3 of this ordinance.

"Section 2. That the rate of fare shall not exceed five (5)

cents for a single fare, or six tickets for twenty-five (25) cents."

In March, 1910, the company stopped the sale of "strip tickets" at the rate of six for a quarter on all their lines.

The city thereupon filed this bill in equity.

A preliminary injunction issued, commanding the company to "restore and continue the practice as to the sale of tickets on its cars pursued prior to March 18, 1910, and they are commanded . . . . to sell to passengers on the cars of the said Union Traction Company in the City of Reading six tickets for twenty-five cents, each ticket constituting one fare." This injunction was later made permanent.

*Error assigned* was the decree of the court.

*Isaac Hiester* and *C. H. Ruhl*, with them *R. L. Jones*, for appellant, cited: Philadelphia v. Phila. Rapid Transit Co., 224 Pa. 544, and 228 Pa. 325.

*Henry P. Keiser*, city solicitor, for appellee.

OPINION BY MR. JUSTICE BROWN, July 6, 1911.

The court below, in its sixth finding of fact, found that "The stipulations contained in the letter of Oct. 6, 1906, relative to the removal of the turn-out on Schuylkill Avenue the fare limit and the fare itself, were carried out, the United Traction Co. accepting all over the city for a single fare 5 cents in cash or one of 6 tickets sold in strips for 25 cents." This, to say the least, is misleading. The bill avers and the answer admits that for years prior to the date of the filing of the bill the rate of fare charged by the United Traction Company for a continuous passage, with transfers at various intersections of its railways, had been five cents, or, at the option and request of passengers, six tickets, each constituting one fare, were sold for twenty-five cents, and each of said tickets was good for a ride upon any of the cars of the company at any time and was ac-

cepted in the same manner and to the same effect as if a cash fare of five cents had been paid. What the company did after the letter of October 6, 1906, from Walter A. Rigg, and the approval of the ordinance permitting the connection of the Front & Fifth Street Railway Company's track with the Schuylkill avenue line, was merely a continuance of what it had done of its own motion for a long time prior thereto, and, not having been required by any law, ordinance, contract or agreement with the city to introduce a strip system, or to continue it, the company's right was to discontinue it at any time prior to the approval of the ordinance which, in the opinion of the learned chancellor below, has imposed upon the company the duty of selling to all passengers on its cars in the city of Reading six tickets for twenty-five cents, each ticket constituting one fare and good on any of its lines. The question before us is not whether, under the ordinance, the United Traction Company ought to be compelled to sell six tickets for twenty-five cents, good over the Schuylkill avenue or Front and Fifth street railway line. The bill was not filed for the purpose of having that question determined. Its prayers are that the United Traction Company be required to continue to sell six tickets, each constituting one fare, for twenty-five cents to passengers on the cars operated by it; that the discontinuance of the sale of said tickets be decreed to be in violation of the ordinance of December 8, 1906; and that the letter of October 6, 1906, from Walter A. Rigg, be decreed an obligation on the part of the United Traction Company to sell six tickets for twenty-five cents, each constituting one fare for a passenger over any one of the lines controlled by the said company and to be good on any car on any one of its lines in the city of Reading.

Even assuming that Rigg was authorized to act for the United Traction Company, or, if not authorized to act for it, that it subsequently ratified what he did, what was done by him that committed the company to an agreement to continue for all time to sell six tickets for twenty-five

cents, each good for a single fare over any one of the lines operated by it? His letter to the chairman of the railways committee of councils related solely to the proposed change in the operation of but two of the lines leased by the traction company. They were the Schuylkill avenue and the Front and Fifth street lines. Not another line operated by the company was mentioned in the letter or referred to in the interviews between Rigg and the chairman of the railways committee. And what is said in the letter? Simply that "there would be no increase in fare." Nothing is said about a sale of six tickets for twenty-five cents. The fare not to be increased was to carry a passenger from any part of the city to any point on Schuylkill avenue or around the loop to Front and Buttonwood streets, or from Schuylkill avenue and Buttonwood street and points beyond around the loop to any part of the city. Two months after the letter was written the ordinance was approved, the second section of which provides that the rate of fare shall not exceed five cents for a single fare, or six tickets for twenty-five cents. Though this ordinance granted to the Front & Fifth Street Railway Company the privilege of connecting with the Schuylkill avenue line and was formally accepted by the railway company, the learned court below correctly held that the United Traction Company was bound by its provisions. But as there was nothing in Rigg's letter to indicate that when he wrote it he had in his mind all of the lines operated by the traction company, so there is nothing in the ordinance to indicate that the sale of six tickets for twenty-five cents, good over all of its lines, was to be continued by the United Traction Company; and one of its valuable rights is not to be taken from it by any process of reasoning to show that, under the circumstances, it had impliedly agreed to surrender such right. If the city of Reading had intended, as a condition of the passage of the ordinance of December 8, 1906, that the United Traction Company should continue permanently the sale of six tickets for twenty-five cents, good over all of its lines, such a provision could have been ex-

pressly written into the ordinance, and the acceptance of it by the Front & Fifth Street Railway Company, followed by the United Traction Company's exercise of the privilege granted by it, would commit that company to its provisions; but this is not the situation. Nothing in the letter nor in the ordinance can be construed into an agreement by the United Traction Company to continue the general sale of strip tickets, and its right was, and the right of the Reading Transit Company, its successor, is, to charge a fare of five cents for every passenger riding on its lines, except as it may be committed by the ordinance of December 8, 1906, to continue to sell six tickets for twenty-five cents, good to or from points on the Schuylkill avenue and Front and Fifth street railway lines. That question, however, is not to be passed upon until it is properly raised.

The decree of the court below is reversed and the bill dismissed at the cost of the appellee.